UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

─────

JOHN L. NORRIS,

                    Plaintiff,                    Case No. 2:16-cv-198

v.                                       Honorable Gordon J. Quist

CAROL WILLIAM et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff, John L. Norris, a state prisoner who is currently confined at the Carson City Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants RN Carol William, Aramark Supervisor T. Hunt, Medical Doctor Bienvenido B. Canlas,

Regional Medical Officer William C. Borgerding, and Sergeant Unknown McClean.  Plaintiff
contends that while he was confined at the Kinross Correctional Facility (KCF), Defendants failed
to provide him with appropriate treatment for an injury to his right arm in violation of the Eighth
Amendment.

Plaintiff alleges that on November 8, 2014, while he was working in the kitchen at
KCF, a metal air filter fell from the ceiling and hit his right forearm.  Defendant Hunt was Plaintiff's
supervisor and witnessed the accident.  Plaintiff asked Defendant Hunt to write an incident report
so that Plaintiff could go to medical for evaluation and treatment.  Defendant Hunt refused, telling
Plaintiff to get back to work.  Plaintiff protested that he had pain and numbness in his arm, but
Defendant Hunt again refused to write a report and walked away.  Plaintiff then approached
Defendant McClean and explained the situation.  Defendant McClean stated that since Plaintiff's
arm was not broken, Plaintiff did not need to go to medical, but that he would lay Plaintiff in for the
day.  Plaintiff was told to return to his unit.

On November 9, 2014, Plaintiff reported to work with a painful swollen right hand
and arm.  Plaintiff again asked Defendant Hunt to write an incident report so that Plaintiff could go
to medical.  Defendant Hunt wrote the report, but refused to sign it.  Plaintiff went to medical and
was seen by Defendant William, who stated "Just a little pain you'll be alright in a couple days,
here's some ibuprofen and a[n] ace wrap go back to your unit."  On November 12, 2014, Plaintiff
sent a kite to medical, complaining of extreme pain, numbness, and loss of strength in his right hand
and arm.  On November 14, 2014, Plaintiff saw Defendant Canlas and asked to be sent to an outside
hospital.  Defendant Canlas did not believe that Plaintiff's injury was that serious and gave him a
detail for no lifting.

On November 24, 2014, Plaintiff was x-rayed at the Chippewa Correctional Facility
(URF).  On December 14, 2014, a blood vessel ruptured in Plaintiff's arm.  Plaintiff sent a kite to

medical. On December 17, 2014, Plaintiff was seen by Nurse Practitioner Tara M. Weist, who photographed Plaintiff's arm. On February 9, 2015, Plaintiff was sent to Marquette General Hospital and was examined by Dr. Roman Politi, who asked why it had taken so long for Plaintiff to get to the hospital. Dr. Politi performed and EMG on Plaintiff's arm. Plaintiff's arm continued to be swollen. On February 19, 2015, Defendant Borgerding declined to place Plaintiff's right hand in a splint, even after acknowledging that Plaintiff had persistent pain, decreased strength, and paresthesia, and was unable to hold a cup in his right hand.

On February 23, 2016, Plaintiff went to War Memorial Hospital and was seen by Dr. Richard Gonzhorn, who was an orthopedic surgeon. Dr. Gonzhorn stated that Plaintiff had crushed nerves in his right arm and would likely always suffer from numbness, pain, tingling, and weakness. Plaintiff is unable to use his right hand due to the pain and requires a helper to pick up his meal trays, write, and perform other activities of daily living. Plaintiff has been unable to work since November 8, 2014. On March 12, 2015, Plaintiff went to one therapy session, but could not participate because the officers never removed his handcuffs. Plaintiff reported this upon returning to the facility.

Plaintiff claims that Defendants William, Hunt, Canlas, Borgerding, and McClean violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages and costs, as well as declaratory and equitable relief.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

- 4 -

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

- 5 -

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th

Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

According to the complaint, Plaintiff suffered an injury to his right arm on November 8, 2104. Defendant Hunt said that since Plaintiff's arm was not broken, he did not need to go to medical. However, Defendant McClean allowed Plaintiff to leave his work assignment and go to his unit. Plaintiff was seen by medical on the day after the accident by Defendant William, who examined Plaintiff and gave him an ace wrap and some ibuprofen. On November 14, 2014, Defendant Canlas examined Plaintiff and gave him a "no lift" detail. On November 24, 2014, Plaintiff received an x-ray. On December 17, 2014, Plaintiff was examined by a Nurse Practitioner. On February 9, 2015, Plaintiff received an EMG at Marquette General Hospital. On February 19, 2015, Defendant Borgerding examined Plaintiff, and on February 23, 2016, Plaintiff was seen by an orthopedic surgeon at War Memorial Hospital.

Plaintiff attaches copies of grievances and grievance responses to his complaint as exhibits. On March 15, 2016, RN Wendy Ball responded to a step I grievance by stating:

> Investigation of the patient's complaint and the patient's electronic medical record indicates the patient was evaluated by the medical provider on March 2, 2016 for neurologic pain of the right arm. In 2014, the patient's arm was injured causing a mononeuropathy of the radial right nerve. Patient was sent offsite to an orthopedic surgeon on February 23, 2016 and surgery was not recommended at this time. The pain committee recommendations were to treat with Tylenol and nonsteroidal medication which are presently ordered. Denial of treatment including offsite treatment has not been demonstrated as stated in the grievance.

*See* ECF No. 1-1, PageID.12.

On April 4, 2016, RN BSN Patricia Lamb responded to a step II grievance appeal by stating:

> Review of the electronic medical record reveals that grievant was seen by Dr. Bonefeld on 3/2/16 following grievant's recent off-site consultation with an orthopedic surgeon re: grievant's remote right arm injury.   Per that specialist, surgical intervention is not recommended at this time.   Further review of grievant's record confirms that the initial injury to his forearm was reported on 11/9/14.  He was evaluated by staff members RN Williams and Dr. Canlas in the days and weeks immediately following that injury.  It appears that grievant is claiming that RN Williams and Dr. Canlas failed to respond appropriately to his injury in November of 2014. Grievant has been seen by many other staff members in the months since.  Multiple diagnostic tests have been completed such as x-ray, EMG and MRI.   Grievant's treatment plan has been modified as deemed appropriate during this time.   Analgesics are currently prescribed.    Further off-site evaluation is not under active consideration at present.
>
> Grievant's presumably recent conclusion that RN Williams and Dr. Canlas denied him necessary evaluation and treatment in November, 2014 is not supported by the record.  From the time of grievant's initial report of injury to the present date, interventions have been ordered as deemed appropriate based on grievant's presentation at any given time.   While grievant's concern re: his symptoms is acknowledged and understood, grievant is reminded that his disagreement with the plan of care does not constitute a denial of treatment.

*See* ECF No. 1-1, PageID.14.

In this case, it is clear that Plaintiff's complaint asserts a disagreement with the medical attention he received, not a complete denial of treatment.  Plaintiff's allegations support, at most, a claim of negligence or malpractice.  As noted above, such a claim does not rise to the level of an Eighth Amendment violation.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  October 4, 2016                                         /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE